U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*/s/ Michael Lynn*
**United States Bankruptcy Judge**

**Signed July 06, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HARRY EUGENE WILKERSON AND | § | CASE NO. 07-43662-DML |
| GEORGIA LOU WILKERSON, | § | |
| | § | CHAPTER 13 |
| DEBTORS. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the *Trustee's Motion for Rehearing Pursuant to Rule 8015 of the Federal Rules of Bankruptcy Procedure* (the "Motion") filed by chapter 13 trustee Alice Whitten (the "Trustee"). The Motion requests that the court reconsider its earlier decision denying the Trustee's proposed modification to the chapter 13 plan (the "Plan") of Harry Eugene Wilkerson and Georgia Lou Wilkerson (together, "Debtors") and approving Debtors' modification to the same. On May 23, 2011, the court held a hearing (the "Hearing"), at which counsel for the Trustee and counsel for Debtors presented oral argument. The court has also considered, in addition to the Motion, the Plan, the *Order Confirming Chapter 13 Plan, Valuing Collateral;*

1

*Allowing Debtor's* [sic] *Attorney's Fees; Providing for a Trustee's Recommendation Concerning Claim and Other Related Matters* (the "Confirmation Order"), the *Trustee's Modification of Chapter 13 Plan After Confirmation (Excess Base)* (the "Trustee's Modification"), the *Debtor's* [sic] *Response to Trustee's Modification of Chapter 13 Plan After Confirmation (Excess Base)* (the "Debtors' Response and Modification"), and the *Trustee's Reply to Debtors' Response to Trustee's Modification of Chapter 13 Plan After Confirmation (Excess Base)* (the "Trustee's Objection").

The court exercises core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(A). This memorandum opinion and order constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052 and 9014.

**I.   BACKGROUND**

Debtors filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code (the "Code")[1] on August 27, 2007, and submitted the Plan on that same date. The present dispute stems from a discrepancy between two key numbers as calculated in the Plan.

As reflected on Debtors' Schedule J, Debtors' net monthly income, representing take-home pay less expenses, is $1,000. *See* Dkt. 1, Schedule J, Line 20C. On the other hand, Debtors' Form 22C, the *Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income* (the "Form 22C"), shows monthly disposable income of $271. *See* Dkt. 6. As Debtors are above-median earners, their applicable commitment period is five years. *See* Code § 1325(b)(4)(A)(ii). Debtors' monthly disposable income is to be calculated based upon Internal Revenue Service Guidelines (*see* Code §§ 1325(b)(3) and 707(b)(2)(A)) – in other words, in accordance with the Form 22C.

---

[1]   11 U.S.C. §§ 101 *et seq.*

In formulating the Plan, Debtors calculated the applicable base amount (the "Base Amount") by multiplying their net monthly income by the five-year commitment period – i.e., $1,000 times 60 months for a total of $60,000. Debtors calculated their unsecured creditors' pool (the "Unsecured Creditors' Pool"), however, by multiplying their disposable monthly income as reflected on the Form 22C by the five-year commitment period – i.e., $271 times 60 months for a total of $16,620. Incorporating the latter calculation, the Plan provided that allowed unsecured claims will be paid pro rata from the greater of the Unsecured Creditors' Pool or equity in non-exempt property of $95. *See* Dkt. 2.

The Plan also provided for the Trustee to pay $11,714 plus 9.25% interest to Toyota Motor Credit ("Toyota") in satisfaction of a secured claim, and for payment of fees due the Trustee and Debtors' counsel. *See* Dkt. 2, ¶¶ B2, C, and E2A. As the only other claimants to be paid under the Plan were unsecured creditors (per the Unsecured Creditors' Pool), the Plan provided for payments of only approximately $35,000, notwithstanding the Base Amount of $60,000. This discrepancy between the Base Amount and the total payments due under the Plan was apparent from the Plan's face.

Though there can be no question that the Trustee or any unsecured creditor could have objected to confirmation of the Plan on the basis that a greater share of the Base Amount should go to unsecured creditors, neither the Trustee nor any creditor did so. On November 26, 2007, the court entered the Confirmation Order, which, in accordance with the Plan, stated that "allowed unsecured claims will be paid pro rata from the greater of an unsecured creditor's [sic] pool of approximately $16,260.00 or non-exempt property of $95.00." *See* Dkt. 19.

Approximately three years later, on August 18, 2010, the Trustee filed the Trustee's Modification whereby the Trustee sought to modify the size of the Unsecured Creditors' Pool so

that the Trustee could pay the excess of the Base Amount pro rata to the holders of timely filed allowed, non-penalty general unsecured claims. *See* Dkt. 48. Debtors subsequently filed the Debtors' Response and Modification, opposing the Trustee's Modification and proposing a modification of their own whereby the duration of the period during which Debtors were to make payments under the Plan would be reduced from 60 months to 36 months, and the Base Amount would be reduced from $60,000 to $36,181.56. *See* Dkt. 50. The Trustee then filed the Trustee's Objection in opposition to the Debtors' Response and Modification. *See* Dkt. 51.

On October 21, 2010, the court held a hearing (the "Modification Hearing") on the Trustee's Modification, the Debtors' Response and Modification, and the Trustee's Objection. At the conclusion of the Modification Hearing, the court requested that the parties submit briefs in support of their respective positions. After reviewing the parties' briefs, the court issued a memorandum order on January 12, 2011 (the "January 12 Order"), denying the relief requested in the Trustee's Modification and approving the modification described in the Debtors' Response and Modification. *See* Dkt. 55. The court reasoned that the amount of the Unsecured Creditors' Pool was fixed by the Confirmation Order and, consequently, modification of the amount of the Unsecured Creditors' Pool was barred by the doctrine of res judicata. The language in the Confirmation Order – that "allowed unsecured claims will be paid pro rata from the greater of an unsecured creditor's [sic] pool of approximately $16,260.00 or non-exempt property of $95.00" – capped Debtors' obligation to the holders of timely filed allowed, non-penalty general unsecured claims. As Debtors had paid the Unsecured Creditors' Pool in full as required by the Plan and the Confirmation Order, the court concluded that Debtors could not be required to pay more.

On January 25, 2011, the Trustee filed the Motion to Reconsider, in which she argued that the relief requested in the Trustee's Modification could not be denied on res judicata grounds because Code § 1329(a) permits a debtor, a trustee, or a holder of an allowed unsecured claim to propose a modification of a confirmed plan. *See* Dkt. 56; Code § 1329(a). The Trustee further argued that, were res judicata to bar the Trustee's Modification, the modification proposed by Debtors must also be barred. After considering the arguments of counsel at the Hearing, the court took the matter under advisement.

## II. HOLDING

The court concludes that the Trustee is correct that the January 12 Order was based on faulty reasoning. However, given the facts presented here, the court also concludes that it reached the correct result in the January 12 Order. For the reasons discussed below, the court holds that the Trustee's Modification is barred by the doctrine of res judicata.

As for the Trustee's argument that res judicata should also bar the modification proposed by Debtors, the court concludes that this contention is, for all practical purposes, moot. Because Debtors have fully performed to the extent required by the Plan, no purpose would be served in continuing this chapter 13 case; while the court might require Debtors to pay in full to the Trustee the Base Amount of $60,000, the excess above the amount necessary to make payments called for by the Plan would in any event be payable to Debtors. *See Jackson v. Marlette (In re Jackson)*, 317 B.R. 573, 581 (Bankr. D. Mass. 2004) (where debtors had standing to bring lawsuit for the purpose of using any recovery to satisfy their plan payments, any excess proceeds would inure to debtors' benefit); *In re Pope*, No. 88-00832, 2008 WL 5133259, at *1 (Bankr. D. Colo. 2008) ("When the trustee concludes making required payments under the plan to creditors,

and there are excess funds left, the trustee refunds the excess funds to the debtors . . . ."). The modification proposed in the Debtors' Response and Modification is therefore approved.

**III. DISCUSSION**

At issue in this case is whether a chapter 13 plan may be modified pursuant to Code § 1329(a), notwithstanding that the changes effected by the modification could have been urged at confirmation. For the reasons stated below, the court concludes that, given the facts presented here, res judicata bars the Trustee's Modification.

There can be no doubt, leaving aside for the moment the specific issue at hand, that res judicata applies to an issue addressed or that could have been addressed in connection with plan confirmation. *See Eubanks v. FDIC*, 977 F.2d 166, 173 (5th Cir. 1992); *In re Howe*, 913 F.2d 1138, 1143 (5th Cir. 1990) ("The law is well settled that a plan is binding upon all parties once it is confirmed and all questions that could have been raised *pertaining to such plan* are res judicata.") (emphasis in original); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1054 (5th Cir. 1987).[2]

"'For a prior judgment to bar an action on the basis of res judicata, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.'" *See Brown v. Chesnut (In re Chesnut)*, 356 Fed. Appx. 732, 736 (5th Cir. 2009) (quoting *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc)) (emphasis omitted).

---

[2] Although *Eubanks*, *Howe*, and *Shoaf* are chapter 11 cases, the doctrine of res judicata applies equally with respect to orders confirming a chapter 13 plan. *See In re Chappell*, 984 F.2d 775, 781 (7th Cir. 1993) (citing *In re Gregory*, 705 F.2d 1118, 1121 (9th Cir. 1983)); *In re Braune*, 385 B.R. 167, 172 (Bankr. N.D. Tex. 2008); *In re Rincon*, 133 B.R. 594, 596 (Bankr. N.D. Tex. 1991); *In re Euler*, 251 B.R. 740, 746 (Bankr. M.D. Fla. 2000).

6

The first three of these elements are clearly met in the case at bar; only the fourth element – that the same cause of action be involved in both cases – requires considered explanation. First, both the Trustee and Debtors were before the court with respect to the Confirmation Order. *See, e.g.*, *Trustee's Report of Confirmation*, Dkt. No. 20. Second, the court was a court of competent jurisdiction for the purpose of entering the Confirmation Order. *See* 28 U.S.C. §§ 1334(a) and 157(b)(2)(L). Third, an order entered by a bankruptcy court confirming a chapter 13 plan is a final judgment. *See United Student Aid Funds, Inc. v. Espinosa (In re Espinosa)*, 130 S. Ct. 1367, 1376 (2010).

The fourth element necessary to the application of the doctrine of res judicata is that the same matter must be at issue. Courts interpret this to mean that the issue currently before the court could have and should have been addressed before entry of the prior judgment. *See Eubanks*, 977 F.2d at 173; *Howe*, 913 F.2d at 1144. In the case at bar, the discrepancy between the Base Amount (calculated based on Debtors' net income as reflected on Schedules I and J), and the payments required by the Plan, equal to the sum of the Unsecured Creditors' Pool (calculated based on disposable income determined using the Form 22C), payments due Toyota, and administrative claims, was apparent from the face of the Plan. The discrepancy that resulted in the present dispute therefore could (and should) have been raised by the Trustee prior to entry of the Confirmation Order, and, thus, all four parts of the res judicata test are met here.

The Trustee, however, reasons that, notwithstanding the applicability of res judicata to the Confirmation Order, Code § 1329(a) provides her with an absolute right to request a post-confirmation modification of a chapter 13 plan. Code § 1329(a) provides:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

7

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments; [or]
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan[.]

Code § 1329(a).

According to the Trustee, the court's conclusion that res judicata bars the Trustee's attempt to modify the Unsecured Creditors' Pool would strip Code § 1329(a) of its meaning, since that section states without caveat that a chapter 13 plan may be modified post-confirmation upon request of a trustee, provided the debtor has not completed his or her plan payments. The gist of this argument is that the plain language of Code § 1329(a) provides an exception to the application of res judicata to a confirmation order where the trustee, the debtor, or an unsecured creditor requests a plan modification.

The court has addressed this issue on at least two prior occasions, each time resolving it in favor of res judicata. *See In re Braune*, 385 B.R. at 172 (denying trustee's request to modify plan to add a portion of the proceeds received by debtors post-confirmation as a result of settling a lawsuit, where the existence of the lawsuit was known at confirmation and the order confirming the plan contained no language providing that proceeds of the lawsuit would go to unsecured creditors); *In re Williams*, No. 05-47644, 2007 WL 4522326 (Bankr. N.D. Tex. Dec. 19, 2007) (denying debtor's request to modify confirmed plan to take advantage of Texas exemptions, since the debtor could have claimed Texas exemptions prior to confirmation of his plan). This case is no different, and the court can see no reason why it should render a decision inconsistent with *Braune* and *Williams*.

The Trustee cites *In re Meza* for the proposition that "[m]odification is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly." *In re Meza*, 467 F.3d 874, 877 (5th Cir. 2006). *Meza* addressed a motion by a chapter 13 trustee to modify a plan pursuant to Code § 1329(a) so that a portion of the debtors' income tax refund could be paid to unsecured creditors. *Id.* at 876. The *Meza* Court noted that, though "[s]ome courts have required an unanticipated, substantial change to occur before permitting such plan modification," Code § 1329(a) does not by its terms provide for such a requirement. *Id.* at 877-78. The *Meza* Court therefore determined that it need not consider the issue of whether receipt of the income tax refund constituted such a change of circumstance. *Id.* at 878.

The *Meza* Court did not consider (and it appears no party raised) the issue of whether res judicata applied to bar the modification. The opinion therefore holds little relevance for the case at bar. At any rate, *Meza* in no way eviscerates the holdings of cases such as *Eubanks*, *Howe*, and *Shoaf*. The fact that a trustee, debtor, or unsecured creditor need not provide evidence of an unanticipated, substantial change when requesting a modification in no way leads to the conclusion that that party may modify a plan with respect to an issue that could and should have been raised at confirmation. Put another way, the fact that a party *need not* show the existence of a change that was *unanticipated* does not provide carte blanche for the party to request a modification with respect to an issue that should have been identified and addressed at confirmation. The court therefore concludes that *Meza* does not control this case.

The Trustee further argues that "if the Confirmation Order prevents a modification of the [Unsecured Creditors' Pool] under the principles of res judicata, then any proposed modification of [the Plan] after confirmation filed by the Trustee or debtor, in any case, to increase or reduce

9

the amount of payments would not be allowed and [] the Courts [sic] holding would eliminate the effect that [Code § 1329(a)] would have" (emphasis omitted). Ignoring for the sake of argument that policy is subordinate to precedent in our legal system, the court believes that the Trustee overstates the extent to which res judicata threatens the flexibility provided by Code § 1329(a), especially given the peculiar facts of the case at bar. Inextricably intertwined with the finality ensured by the doctrine of res judicata is the equitable principle that res judicata forecloses only "second chances." The preclusive effect of res judicata does not therefore extend to every proposed modification, as the Trustee contends, but rather to a modification respecting an issue that could and should have been addressed at confirmation; by its very elements, the doctrine only prevents the Trustee from "seek[ing] a second bite at the apple." *Braune*, 385 B.R. at 172.

Furthermore, the Trustee is not the only party allowed by Code § 1329(a) to request a plan modification; a debtor or a creditor holding an allowed unsecured claim may also do so. Plainly, the finality relied upon by a trustee in distributing funds in accordance with a chapter 13 plan would be in serious jeopardy were a debtor able to request a modification to a confirmed plan even where the issue upon which the modification is based could have been raised at confirmation.

To be sure, applying res judicata to bar a trustee (or a debtor or unsecured creditor) from requesting a plan modification does, to some extent, impinge upon the flexibility provided for in Code § 1329(a). The court is cognizant of the fact that a chapter 13 trustee often carries a heavy caseload, and thus may have difficulty identifying every problem that may arise with respect to a debtor's plan. But the facts presented here are unusual, and where the weight of Fifth Circuit

10

precedent supports applying res judicata to preclude the Trustee's Modification, the court cannot do otherwise.

## IV.   CONCLUSION

For the foregoing reasons, it is therefore ORDERED that the relief requested in the Trustee's Motion to Reconsider is DENIED.  It is further ORDERED that the relief requested in the Debtors' Response and Modification is GRANTED.  The January 12 Order is withdrawn and abrogated and this memorandum opinion and order are substituted therefor.

It is so ORDERED.

#### END OF MEMORANDUM OPINION AND ORDER ###